PEOPLE ex rel. McMORROW v. ROOSEVELT et al.

(Supreme Court, Appellate Division, First Department. December 17, 1897.)

1. POLICE COMMISSIONERS—REMOVAL OF OFFICER.
    The power of the board of police commissioners of New York City to remove a member of the force for conduct unbecoming an officer, is not impaired by the fact that his offense was committed while he was on probation, and before he received his full appointment.

2. SAME—PREJUDICED TRIBUNAL.
    If, when a charge against a police officer is to be passed upon by the board, there is a sufficient number of impartial commissioners to pass upon the case, but one of them is absent, and his place is filled by a commissioner who has a personal grievance against the accused which is inseparably connected with the charge under consideration, the action of the board in dismissing the accused is irregular, and will, on certiorari, be annulled.

    Ingraham, J., dissents.

Certiorari by the state, on the relation of Charles McMorrow, against Theodore Roosevelt and others, to review dismissal of relator from the police force. Relator reinstated.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

L. J. Grant, for relator.
T. Farley, for respondent.

PATTERSON, J. The relator was removed from his position as a member of the police force of the city of New York, after a trial before commissioners, upon a charge of conduct unbecoming an officer, the offense consisting, according to the specification, of his having at some time between the 18th and 30th days of November, 1895, paid to some person unknown the sum of $200, a part consideration for securing his appointment on the police force of the city of New York. At the date mentioned, the relator was a probationary member of the force,—that is to say, he was on trial as to his fitness,— and it is not to be disputed that if, at the end of his probation, he was not regarded by the commissioners as a competent person, he

could have been dropped from the service without any formal proceeding brought against him.    In re Murray, 18 App. Div. 337, 46 N. Y. Supp. 172.    But, while he was thus on probation, he was nevertheless under the control, and subject to the authority and orders, of the board.    All appointees as patrolmen must have served a probationary period.    Consolidation Act, § 265, subd. 3, as amended in 1895.    Such probationers are not entitled to an absolute appointment until the test period has expired, but during that period they perform the duties, receive the pay, bear the responsibilities, are subject to the rules and regulations of the force, and for misconduct are amenable to the disciplinary jurisdiction of the commissioners. The relator's alleged offense was not, apparently, discovered until long after he received his full appointment, but it was one committed, if at all, while he was discharging on the force the first stage of duty,—a prerequisite to his full appointment.    There is no substance, therefore, in the objection that his alleged offense was beyond the cognizance of the board.

The principal objection urged to the determination of the commissioners now brought up for review by the writ of certiorari is that the relator did not have a fair trial; that one of the commissioners who passed upon his case was the accuser, the only material witness against him, and one of his judges; and that another of the commissioners was shown to have been so situated with reference to the subject-matter of the inquiry that he could not give an impartial judgment.    Of necessity, in the discharge of the duties of his office, a commissioner has authority to make his own preliminary inquiry into the efficiency and the acts of any member of the force, and there are many cases in which he must be both accuser and witness.    It was in the performance of his duty that the commissioner, witness in this case, became aware of the existence of facts upon which the charge was based against the relator of having procured his place upon the force by bribery.    The original or preliminary investigation into that charge was had before another commissioner.    It appeared that at some time prior to such investigation the relator had made and signed, in the presence of the commissioner who was the witness, a statement to the effect that he (the relator) had agreed to pay to a certain named person the sum of $400 in case he were appointed on the force, and that he actually did pay to such person on account the sum of $200.    What purported to be a confession signed by the relator was identified and received by the trial commissioner, and the witness, the commissioner, who produced that statement, was cross-examined by the relator's counsel.    The relator was then sworn, and testified to his having paid the sum of $200 to some person who asked him to join a Republican club, he being told that he never could wear the uniform of the force if he would not join that club, and help it out, as it was "in hard circumstances."    There was no such club, but nevertheless the relator, by his own statement, paid that money to some person.    He had said in his ex parte statement that he paid it to a certain patrolman, but, upon being confronted with that patrolman, he denied ever having seen him, or paid the money to him.    He also swore at the investigation or trial that at

the time he made his written statement he did not understand some
of the questions, that he did not fully realize the meaning of some
of them, that he did not read his statement after it was taken down,
and the tendency of his testimony was to impeach or materially mod-
ify the effect of the writing that had been produced as the only evi-
dence of his guilt.  Thereupon the commissioner who had produced
the statement was recalled to contradict the relator, and his testi-
mony was directed to showing the falsity of the relator's claim re-
specting his want of understanding of what was contained in the
statement. and of the circumstances under which that statement was
given, and what the relator said when it was made.  The case was
referred to the board of police commissioners.  That board was com-
posed of three members, and in its constitution included the same
member who had testified on the merits adversely to the relator.  That
might not have affected the legality of the action of the commission-
ers had a sufficient number of impartial judges acted upon the rela-
tor's case.  Sometimes, of necessity, a witness may or must act judi-
cially.  Cases of that character are collated and commented upon in
Re Ryers, 72 N. Y. 1, and People v. Borhing, 59 N. Y. 374.  But the
record in this case discloses that another of the commissioners who
sat in the relator's case was so connected with the inquiry that he
could not be otherwise than biased against the relator.  It was fully
proven that the statement containing the alleged confession of the
relator, as it was produced before the commissioner who conducted
the investigation originally, was mutilated, a part of it having been
deliberately cut out.  The part thus cut out contained what the com-
missioners deemed a scandalous imputation upon a member of the
board, so much so that they all agreed that it was a gross outrage
to allow it to stand recorded.  The commissioner who was thus as-
sailed was justly incensed, but nevertheless he voted upon the rela-
tor's case, and to dismiss him from the force.  A judge so situated,
with a personal grievance against an accused, inseparably connected
with the charge upon which that accused is tried, cannot, in the
nature of things, be an impartial judge.  The commissioners found
the relator guilty of bribery in having paid money directly to secure
his appointment upon the force.  The contention the relator made
upon the trial was that the record of his alleged confession was not
true, that he did not admit having paid money to any person to pro-
cure his appointment, but stated only that he was deceived by some
one into paying a sum of money to join a club, and thus prevent its
opposition to his appointment.  However unsound or unreasonable,
or the contrary, this distinction may be, the relator was entitled to
a trial by unprejudiced judges, if such were available, and to have
it considered whether or not he was merely joining and contributing
money to this club under fear of its opposition, or whether he was pay-
ing money directly and illegitimately to secure an appointment.

We express no opinion as to the merits of the case (leaving that
matter to be considered in any future proceeding that may be insti-
tuted against him), but only determine that the relator did not have
a fair trial, as the board that passed upon his case was constituted.
It is not an answer to this to say that accused policemen can be

tried only by the commissioners, and that a majority of the board must concur to authorize a sentence. Section 251, Consolidation Act 1882, as amended by Laws 1895, c. 569. There was a fourth commis· sioner, who did not sit in the case, and whose presence would have made a tribunal properly composed, and competent to sit in judgment on the relator's case. There was no legal necessity to have the court composed of the three members who finally passed upon the relator's case. One of the commissioners, who was not a witness, had .a personal interest in it, and, as the record shows, really put himself upon trial in the very proceeding before him. It is a fundamental rule that personal or pecuniary interest in a litigation disqualifies a person from acting judicially in that litigation, and, there having been another commissioner, who might have taken part in the trial, it cannot be urged that of necessity the court was properly constituted.

The action of the commissioners should be annulled, and the relator reinstated.

VAN BRUNT, P. J., and RUMSEY and O'BRIEN, JJ., concur. INGRAHAM, J., dissents.