## DALTON v. DARLINGTON et al.

(Supreme Court, Appellate Division, Second Department. January 24, 1908.)

1. MUNICIPAL CORPORATIONS—CIVIL SERVICE LAWS—REGULATIONS—PUBLIC WELFARE.

The primary purpose of civil service laws and rules is to promote the good of the public service, and it is not to be frustrated by technical or narrow constructions.

2. SAME—DEPARTMENTS—HEALTH—POWER—REMOVAL OR DISCHARGE.

The power of the board of health of the city of New York to remove an inspector on formal charges after a hearing is not impaired by the fact that his offense for which his services would have been terminated, but for the impossibility of giving the notice, was committed while he was on probation and before he received his full appointment.

3. SAME.

Where a food inspector in the department of health of the city of New York was on probation under civil service commission rule No. 11, providing that, should his work be unsatisfactory, he would be notified in writing at the expiration of his probation period, and his retention would be equivalent to a permanent appointment, an attempt to notify him in writing on the last day of his probation period of his unsatisfactory work, and the failure to do so until three days later because his whereabouts was unknown, owing to his disobedience of orders, was a reasonable compliance with the rule.

Hooker and Jenks, JJ., dissenting.

Appeal from Special Term, Kings County.

Mandamus by William J. Dalton against the board of health of the city of New York and another to restore relator to a position as food inspector. Peremptory writ issued, and defendants appeal. Reversed.

Argued before WOODWARD, JENKS, HOOKER, RICH, and MILLER, JJ.

James D. Bell (Edward Lazansky, on the brief), for appellants.
Jacob Rouss (Louis J. Grant, on the brief), for respondent.

MILLER, J. The relator applied for and obtained an order directing the issuance of a peremptory writ of mandamus requiring the appellants to restore the relator to a position as food inspector in the department of health of the city of New York. Answering affidavits were filed by the defendants, and the only question before us on this appeal is whether an issue of fact was raised; i. e., whether the relator's right to the writ depended solely upon questions of law. Accepting as true the answering affidavits, the relator was regularly appointed from the civil service list to said position for a probationary period of three months expiring October 15, 1906. On that day the head of the department approved a recommendation, previously made, that the relator be not retained after the termination of said probationary period, and a letter notifying the relator thereof was prepared and an attempt made to serve it upon him on that day; but service was not made for the reason that he could not be found. He had been directed by his chief to report at the office on said October 15th. Instead of doing so, he wired the department on the 16th that he was at Waterville, N. Y. On the 17th a telegram was sent to him, directing him to report to the office on the 18th, and upon his reporting the notice that he would not be retained in the service after the expiration of the probationary period was served upon him. Subsequently formal charges were preferred against him, and notice thereof and of a hearing thereon was given him. At the time set for the hearing he appeared and challenged the defendants' right to proceed with the hearing on the ground that they had already removed him from the service. The charges, however, were considered, and a resolution adopted dismissing him. Rule 11 of the civil service commission provides:

"The person selected shall be duly notified by the appointing officer, and, upon accepting and reporting for duty, shall receive from such officer a certificate of appointment for a probationary period of three months. * * * If his conduct or capacity on probation be unsatisfactory to the appointing officer, the probationer shall be notified in writing that at the end of such period he shall, for that reason, not be retained. His retention in the service otherwise shall be equivalent to permanent appointment."

It is contended now by the relator that, not having been notified, as required by said rule 11, he has received a permanent appointment, and that he cannot be dismissed or removed on charges for any act done during the probationary period. In considering this question it must not be overlooked that the primary purpose of

civil service laws and rules is to promote the good of the public service, and that purpose is not to be frustrated by technical or narrow constructions. The purpose of the probationary period is to enable the appointing officer to determine whether a permanent appointment is desirable. That question is left solely to his judgment, and he has the whole probationary period in which to decide it. The appointing officer determined, on the last day of the probationary term, not to make the appointment permanent. We are not at all concerned with the circumlocution in the department by which that result was reached. It may be that the commissioner could have determined the question at an earlier date; but it is sufficient for our purpose that on the 15th he determined not to make the appointment permanent. Now, on that date the relator was not at the office, as the orders of his chief required, for which reason it was impossible to give him personal notice. As soon thereafter as practicable the required notice was given him, and it seems to me that this was a reasonable compliance with the rule. No one was harmed by the delay, and it was caused by the relator's disobedience of the orders of his chief. To hold now that a permanent appointment resulted from such delay would be to defeat the obvious purpose of the rule. The rule was designed simply to provide a method of indicating the determination reached by the appointing officer. A notice indicated a determination not to make the appointment permanent. No notice at all was in effect equivalent to notice of a permanent appointment. Of course, after making the appointment permanent, the appointing officer could not change his mind and revoke the appointment, as the appointee could be removed only in the manner prescribed by law; but we have no such case.

Moreover, if the failure to give personal notice on the 15th be held to have made the relator's appointment permanent, I think it must follow that he could be removed on formal charges after a hearing for acts done before that time, for which his services would have been terminated but for the impossibility of giving the notice. People ex rel. McMorrow v. Roosevelt, 23 App. Div. 533, 48 N. Y. Supp. 578. I do not dicuss this question at length, however, because it seems to me clear that the service of the notice on the 18th was a reasonable compliance with said rule 11. The relator should have an opportunity to controvert, if he desires the facts set up in the answering affidavits.

The order should be reversed, and the motion denied, without prejudice, however, to the relator's right to apply for an alternative writ if he shall be so advised.

Order reversed, with $10 costs and disbursements, and motion denied, without prejudice, however, to the relator's right to apply for an alternative writ.

WOODWARD and RICH, JJ., concur.

HOOKER, J. (dissenting). The appellants are commissioners composing the board of health of the city of New York and the department

of health of that city. On September 2, 1903, the relator took a competitive examination for the position of food inspector in the department of health, and passed successfully. On June 5, 1906, he was notified by the secretary of the municipal civil service commission of the city of New York that his name had been certified to the department of health for the position of inspector of foods, and on the 16th of July, 1906, he was duly appointed an inspector of foods (milk) on probation. Rule 11 of the civil service commission, relating to the appointment of persons in the civil service of the city, provides as follows:

"The person selected shall be duly notified by the appointing officer, and, upon accepting and reporting for duty, shall receive from such officer a certificate of appointment for a probationary period of three months. * * * If his conduct or capacity on probation be unsatisfactory to the appointing officer, the probationer shall be notified in writing that at the end of such period he shall, for that reason, not be retained. His retention in the service otherwise shall be equivalent to permanent appointment."

It is conceded that the provisions of this rule are applicable to the relator's appointment. It is also provided that no person holding a position in the service of the city shall be removed from such position, except in the manner prescribed by its charter and the civil service law. It is to be observed, then, that the probationary period of the relator expired with the 15th day of October, 1906, which was the end of the three months' time. No notice in writing was served upon him before the expiration of the probationary period that he would not be retained. Because of such failure the relator claims that his temporary ripened into a permanent appointment, and that his later dismissal from the department, which was attempted to be effectuated by the service of such notice on the 18th day of October, 1906, was invalid. Upon his application, an order was made directing that a peremptory writ of mandamus should issue directed to the appellants as commissioners, commanding them to restore the relator to his position. This appeal is from that order.

The return shows that Thomas Darlington, one of the commissioners, received a communication on October 8, 1906, from the chief sanitary inspector in the department, recommending that the relator be notified that his services were no longer required. This letter was accompanied by other documents which originated in the department of health, the purport of which was that the relator should be notified that he would not be retained and that his connection with the department would cease with the expiration of the probationary period. First among these papers attached to the report of the chief sanitary inspector was the report of two inspectors of foods, dated August 24, 1906, in which certain facts were stated which, if true, reflected upon the industry and conscientiousness of the relator. Next attached was the report of another inspector of foods, dated October 8th. Evidently the recommendation of the chief sanitary inspector was not all that the excess of administrative detail in the department required; for on October 9, 1906, the papers having been forwarded to the assistant sanitary superintendent, he indorsed a recommendation that the services of the relator be dispensed with at the end of the probationary period, which "will terminate October 15th." The papers were then

evidently forwarded by the assistant sanitary superintendent to his. chief, the sanitary superintendent, who, on October 12, 1906, marked them "Approved and respectfully forwarded to the board." It appears that these papers finally did get to the board; but how soon after the 12th of October, the papers do not show. The next step in this complicated proceeding, whose simple object was the notification of the relator that he would not be retained beyond his probationary period, is a letter written to the relator, dated at the office of the secretary of the department of health on October 15, 1906, advising him of his unsatisfactory work and notifying him that he would not be retained in the department after the end of his probationary period. The letter was signed by the secretary of the board; but it was evidently late in the day that these complex proceedings had approached so near to a successful termination, for we find a police officer who was connected with the department of health trying to deliver the letter to the relator personally at his home in the borough of Brooklyn at 5:30 o'clock in the afternoon of October 15, 1906, the last day of the probationary period. During all this time, however, the relator, evidently oblivious of the efforts that were being made to separate him from the service, was performing his duties for the department in the upper part of the state, inspecting milk, and the efforts of the police officer to serve him personally were unsuccessful. On October 17th, the chief of the sanitary bureau telegraphed the relator at Waterville, N. Y., requiring him to report at the office of the bureau at once. Relator did report on the 18th day of October, 1906, and was then advised that his services with the department were no longer required.

Every presumption is to be indulged, and there is no legal evidence to the contrary, that the department knew as early as the 8th of October, or could readily have ascertained, the exact whereabouts of the relator, so that the written notification of his separation from the service could have been served personally upon him before the expiration of the probationary period, and there seems to be no valid excuse why such notification was not given to him in time. The language of the rule is plain, and needs no interpretation. It provides that if a probationer is unsatisfactory he shall be notified in writing that he will not be retained, but that his retention in the service otherwise shall be equivalent to a permanent appointment. The civil service laws and the rules enacted to give them practical effect are as well for the benefit and protection of employés as of municipalities; and under the plain reading of this rule the relator's right to a permanent appointment, because of his failure to receive notification during his probationary period that he would not be retained, should not be denied him, especially in a case of this character, where, although the intent to let him go is clear enough, so little real diligence appears to have been exercised in giving him the notice provided for in the rule.

Another phase of the history of this case should be considered. Although the relator was advised on October 18, 1906, that his services were no longer required in the department, yet on October 19, 1906, the chief sanitary inspector preferred charges against him, which contained three charges, with a total of fifteen specifications, all of which,

however, save one, related to his conduct during his probationary period, and doubtless were the grounds which actuated the inspectors of foods, the chief sanitary inspector, the assistant sanitary superintendent, the sanitary superintendent, and the commissioners of the department of health to reach the determination that the relator should not be retained in the service after the expiration of his probationary period. The one exception is specification 6 under charge 1, in which it is charged that on October 18, 1906, the relator did not report at the office of the department of health until 10:50 o'clock a. m., although he had arrived in the city of New York early in the morning. These charges of the chief sanitary inspector were forwarded to the assistant sanitary superintendent, and on October 22, 1906, were by him "approved and respectfully forwarded to the sanitary superintendent." It evidently did not take the same length of time for these charges to get through the cumbersome official channels as it took the recommendation during the probationary period; for the sanitary superintendent approved them on October 22, 1906, the same day they had been forwarded to him by the assistant sanitary superintendent. They were signed, attested, and served upon the relator upon October 23, 1906, and a hearing thereon set for October 24, 1906, at 11 o'clock in the forenoon. The hearing before the board of health was postponed until October 31, 1906, when the relator took the position that, inasmuch as the board had already separated him from the service, it could not then upon these charges separate him again. Whatever may be the merits of that contention, it is enough to say that, with the exception of his failure to call at the office of the department before 10:50 o'clock on the morning of October 18th, all the other charges and specifications dealt with conditions which arose during the probationary period, and which could have been and properly should have been taken advantage of by the department, if they were valid objections to a continuation of the relator in the service, by means of the notification during the probationary period provided for in rule 9 of the civil service laws. People ex rel. McMorrow v. Roosevelt, 23 App. Div. 533, 48 N. Y. Supp. 578. In view of the fact that the relator was in Waterville, N. Y., on October 17th, and received a telegram at 11:30 of that day to report at the office of the department, the charge that he did not get to the office until 10:50 on the morning of the 18th, instead of earlier, is almost too frivolous to consider.

The order should be affirmed.

JENKS, J., concurs.