In the Matter of JOSEPH A. MAYNARD, Appellant, against GEORGE P. MONAGHAN, as Police Commissioner of the City of New York, Respondent.

First Department, June 21, 1954.

*Matthew H. Brandenburg* for appellant.

*Robert E. Hugh* of counsel (*Seymour B. Quel* and *Edwin Weiss* with him on the brief; *Adrian P. Burke, Corporation Counsel*), for respondent.

*Per Curiam.* This appeal is from an order denying a motion for a direction that the police commissioner of the City of New York rescind his termination of petitioner's services as a patrolman of the police department of the City of New York, made at the end of the probationary period, and reinstate the petitioner on a permanent basis.

Petitioner passed the requisite civil service examinations, and on October 3, 1951, was duly appointed as a probationary patrolman. He was assigned to the police academy for a course of training and subsequently did precinct police work. He was dropped from the department as unsatisfactory on April 2, 1952. He alleges that he performed his probationary work without dissatisfaction on the part of his superior officers, which is not denied.

The answer of the police commissioner states two reasons for the action taken. It is stated that the petitioner on August 7, 1949, signed a nominating petition for one Benjamin Davis as a candidate of the Communist Party, an independent nominating body; that Davis at the time was a known Communist, who had been arrested and brought to trial for violation of the Smith Act, a Federal statute proscribing membership in subversive organizations. The answer also alleges that the petitioner had at one time been dropped from a position which he held as temporary appointee in the United States Post Office on a charge of collusion in recording attendance time.

Petitioner states that before he was appointed a probationary policeman, the municipal civil service commission inquired into the incident of the Davis petition and was satisfied with his explanation that he signed the same inadvertently without knowing its import; that he never had been associated in any way with Communism or Communists; that, in fact, he was an honorably discharged veteran of the United States Army, having served in actual combat in the European Theatre in World War II, where he received military honors, including four battle stars. He also denies any misconduct in his Post Office position, and points out that he was rehired and served as temporary clerk for two years continuously up to the time of his appointment in the police department.

Special Term denied the motion on the papers, holding that the police commissioner had a wide and practically unlimited discretion in determining the fitness of probationary patrolmen, and that there was no indication in the record to show that the action taken was arbitrary or capricious.

We agree that the appointing officer has a broad degree of discretion in determining whether to make probationary appointees of permanent rank, but do not find that it is " unlimited ".

The Administrative Code of the City of New York (§ 434a–8.0, subd. c) provides that permanent appointment shall only be made to the position of patrolman in the police department after probationary service as provided in the rules of the civil service. The municipal civil service commission has adopted rule V (§ VIII, subd. 3, par. [a]) which provides for a probationary period of six months, at the end of which the appointing officer may terminate the employment of any " unsatisfactory " employee.

The finding that an employee was unsatisfactory cannot, of course, be an arbitrary one, but must be made in good faith for reasons that appear adequate and made known to the commissioner upon the basis of credible proof, and not mere suspicion. We agree that the commissioner is not confined merely to rating the probationary work of the appointee, but may investigate his past record to determine his character, capability and fitness (*People ex rel. Holsten* v. *Woods,* 167 App. Div. 899; *People ex rel. Walter* v. *Woods,* 168 App. Div. 3). The position of patrolman is such that it is of vital importance to appoint only men of excellent character, who are loyal to the government and not rebellious against duly constituted authority.

This does not mean, however, that mere suspicion of possible subversive tendencies will justify rejection of an appointee. Neither does it mean that the police commissioner must be able to produce proof sufficient to convict the appointee of subversion or show his guilt of other misconduct beyond a reasonable doubt. It merely requires that the appointing officer exercise his discretion in good faith upon evidence that would satisfy a reasonably prudent police commissioner that the applicant's record is unsatisfactory.

This case presents an extremely important issue as to whether this man, a veteran with a fine war record, shall be rejected from the civil service merely because he signed a nominating petition for a Communist candidate for political office. He presents a claim that he was deceived into signing the petition. The possibility of this, or that he signed in ignorance of its import, is not remote. He says that he satisfied the civil service commission on that score. He further says that he never received a hearing of any kind on the subject from the police

commissioner. We find nothing whatever in the record to indicate that he is likely to be or become a security risk, except the signing of the nominating petition for Davis.

We think that the claim of arbitrariness should not have been summarily dismissed under the circumstances. This petitioner was at least entitled to a trial of that issue in open court, where the proof upon which the commissioner acted may be submitted, and the question of whether the determination that petitioner was unsatisfactory for permanent appointment was arbitrary or capricious may be judicially determined upon a complete record.

Accordingly, we reverse the order appealed from and direct that the motion be granted to the extent of directing a trial of the issue of fact as to the arbitrary and capricious nature of the commissioner's act, pursuant to section 1295 of the Civil Practice Act.

CALLAHAN, J. P., BREITEL, BASTOW, BOTEIN and BERGAN, JJ., concur.

Order unanimously reversed and the motion granted to the extent of directing a trial of the issue in accordance with the opinion herein. Settle order on notice.