In the Matter of PETER E. GOING, Respondent, against STEPHEN P. KENNEDY, as Police Commissioner of the City of New York, et al., Appellants.

First Department, February 4, 1958.

174

*Anthony Curreri* of counsel (*Seymour B. Quel* and *Arthur H. Geisler* with him on the brief; *Peter Campbell Brown, Corporation Counsel,* attorney), for appellants.

*Samuel Resnicoff* for respondent.

BASTOW, J.  In this article 78 proceeding the respondents, the police commissioner and other city officials, appeal from an order vacating the commissioner's determination dismissing petitioner from his position as a probationary patrolman. His reinstatement was directed with back pay from July 31, 1955.  The facts are substantially undisputed.  One area of dispute upon the trial as to the date of service of the notice of dismissal has been removed by concession of the appellants in this court that service was made upon the date claimed by petitioner.  Going was appointed a probationary patrolman on February 1, 1955.  Prior thereto he passed a physical examination conducted by the City Civil Service Commission and was marked medically qualified.  He was also given a pre-appointment medical examination by the police department. Following petitioner's appointment and during the six months' probationary period, he was given two additional physical examinations by the medical and surgical bureau of the police

department. The first examination on July 6, 1955 showed petitioner's blood pressure to be 170/110 and the examiners recommended his rejection for permanent appointment because of his hypertension. The second examination on July 28, 1955 disclosed a pressure of 192/94 in one arm and 190/100 in the other and the earlier recommendation was reaffirmed. The commissioner by writing dated July 30, 1955 directed that petitioner's probationary service be terminated at midnight July 31, 1955 for the stated reason that his capacity while on probation was unsatisfactory to the police commissioner. A written notice, dated July 30, 1955, was directed to petitioner advising him that as the result of the report from the medical and surgical bureau his service would terminate effective midnight, July 31, 1955. There was a sharp factual issue presented upon the trial as to when petitioner received this notice. The trier of the facts found that it was received by petitioner on August 1, 1955 and that date has been accepted by appellants upon this appeal.

Special Term reached the conclusion that the commissioner acted arbitrarily and capriciously in terminating petitioner's probationary service. It is the contention of Going, and so Special Term in substance decided, that after the appointment of a probationary patrolman the police commissioner is without power to terminate his services at the expiration of the probationary period upon a finding of physical unfitness but that such authority is vested solely in the director of personnel of the City Civil Service Commission. Otherwise stated, it is claimed that once the commission has certified a candidate as physically qualified and a probationary appointment has been made, any attempt by the police commissioner to terminate the appointment at the end of the probationary period as an unsatisfactory employee based upon physical incapacity or unfitness is an arbitrary and capricious act.

The review of the determination of the commissioner in this proceeding presented two facets. The first — and the one passed upon by Special Term — was in substance the initial finding implicit in the commissioner's decision that he had jurisdiction to terminate the services of petitioner upon a finding of physical incapacity. This involved a construction of the applicable statutes and rules hereinafter discussed. In this area the courts accept the construction of the administrative officer or agency if it has " 'warrant in the record ' and a reasonable basis in law ". (*Matter of Mounting & Finishing Co.* v. *McGoldrick,* 294 N. Y. 104, 108; *Red Hook Cold Stor. Co.* v. *Department of Labor,* 295 N. Y. 1, 9; see, also, Judicial

Review of Administrative Action by Nathaniel L. Goldstein [then Attorney-General], 2 Syracuse Law Rev., 199, 206–207; also in N. Y. L. J., May 17, 1951, p. 1822, cols. 1–2.)

The petition herein also sought to review the exercise of the administrative discretion of the commissioner upon the apparent assumption that he had jurisdiction. Upon this phase of the case proof was offered by petitioner seeking to attack the finding that he was suffering from hypertension in the light of physical examinations made by his personal physician. This being the review of the exercise of administrative discretion in which a hearing was not required by the commissioner, the scope of judicial review would be to determine whether or not the determination was arbitrary or capricious. (*Matter of Maynard* v. *Monaghan,* 284 App. Div. 280, 284.) Special Term did not pass upon this issue and it is not pursued by petitioner upon this appeal. We conclude from our examination of the record that a finding that the determination was arbitrary and capricious could not be made or sustained. Therefore, we direct our attention to the jurisdictional question and consider the pertinent statutes and rules to ascertain if the assumption of authority to act by the commissioner had warrant in the record and a reasonable basis in law.

We start with the provision in section 9 of the Civil Service Law that ''All appointments or employments in the classified service shall be probationary and the civil service commission having jurisdiction shall, by rule, provide for the conditions and extent of probationary service.'' The legal questions presented upon this phase of the proceeding are to some extent the result of the amendment in 1954 of chapter 35 of the city charter. (L. 1954, ch. 354.) Thereby former sections 811 and 812 providing for a Municipal Civil Service Commission were repealed and by the new enactment there was created a city department of personnel under the jurisdiction of a personnel director who also was to act as chairman of the City Civil Service Commission which became a part of the department. The rule-making power as authorized by subdivision 1 of section 11 of the Civil Service Law was continued in the newly created commission. (Cf. generally, Memorandum of the Governor on approving the bill, Public Papers, Governor Thomas E. Dewey, 1954, p. 276.) Subdivision f of section 813 vested in the personnel director the power and duty, among others, '' To investigate applicants for positions in the civil service; to review their qualifications, and to revoke or rescind any certification or appointment by reason of the disqualification of the applicant or appointee under the provisions of the civil

service law, the rules of the civil service commission, or any other law ".

Thereafter, the City Civil Service Commission pursuant to the granted authority adopted certain rules and regulations. Pertinent here are portions of rules III and V. The former provides in part in section VII as follows: " 1. (b) Whenever the Director [of Personnel] shall find *during the probationary period* that an appointee has an unsatisfactory character or reputation or is unfit mentally or physically to hold the position to which he was appointed, he shall be marked ' not qualified ' and the certification of his name shall be revoked and his services terminated. 2. Except in a case where the Medical Examiner of the Department of Personnel has, after examination, found the person mentally or physically unfit, the Director, or his duly designated representative or representatives, shall accord any such person, after due notice to him, an opportunity to be heard prior to taking appropriate action as prescribed under subdivisions (a) and (b) of paragraph 1 of this section." (Emphasis supplied.) Section VIII of rule V (par. 3. [a]) — implementing section 9 of the Civil Service Law — provided prior to January 1, 1956, that " There shall be a probationary period of six months for all permanent appointments, at the end of which period the appointing officer may terminate the employment of any unsatisfactory employee by notice to the employee and the Commission."

There emerges from these rules a clear pattern of the respective jurisdictions of the City Civil Service Commission and the appointing power. The former acting through its personnel director may cause the certification of a probationer to be revoked and his services terminated at any time during the probationary period upon a finding, among other things, of physical unfitness to hold the position. Moreover, if such finding is made by the medical examiner of the personnel department the appointee is not entitled to a hearing, which is limited to proposed terminations upon a finding of unsatisfactory character or reputation.

On the other hand the police commissioner, as the appointing power, is authorized to terminate the employment of any unsatisfactory employee only at the end of the probationary period of six months. He may not act at an earlier date during the period. (*People ex rel. Kastor* v. *Kearny,* 164 N. Y. 64; *Matter of Wolf* v. *Conway,* 276 App. Div. 798; *People ex rel. Hoeges* v. *Guilfoyle,* 61 App. Div. 187.) The object of a probationary period has been stated to be twofold: First, to enable the appointing officer to ascertain the fitness of the

probationer and second, to give the latter a reasonable opportunity to demonstate his ability to perform the duties of the office. (Cf. *People ex rel. Kastor* v. *Kearny,* 49 App. Div. 125, 128.) Otherwise stated, the probationary term may be said to be a further and additional test to which an applicant is subjected before he may obtain permanent status and to meet this test the probationer is entitled to serve the entire term. The City Civil Service Commission by appropriate rule has vested in the appointing officer the right to terminate employment at the end of the period of any "unsatisfactory employee." It scarcely requires stating that in determining whether or not a probationary patrolman is to receive permanent appointment the commissioner is entitled to weigh carefully the physicial condition of the probationer in deciding whether he is a satisfactory employee, that is, one able to meet all requirements or expectations in filling the position.

We find nothing in statute or rules that dilutes or subtracts from the right of the appointing officer to make this determination. Concomitantly with this right the rules give the director of personnel the power at any time during the entire probationary period to make a finding that a probationer is mentally or physically unfit to hold the position. Then, if such finding is made by the medical examiner of the department of personnel, the certification of the name is revoked and services terminated without the right to notice or hearing. Some of the factual situations where this rule has been implemented are found in *Matter of Gallo* v. *Kennedy* (4 A D 2d 505) and *Matter of Lore* v. *Kennedy* (4 A D 2d 507).

We do not agree with the contention of petitioner that the commissioner by his action was questioning or overruling the certification of eligibility made by the Civil Service Commission. The determination of the commissioner was based upon the findings of medical examiners that petitioner was suffering from a physical defect that evidently did not appear at the time of his pre-appointment medical examinations. The commissioner was performing a mandated duty to determine the ability of petitioner to satisfactorily perform the duties of the office at the end of the probationary period. The sole requirement in making the decision was that the commissioner act in good faith. (*Matter of Wolf* v. *Conway,* 276 App. Div. 798, *supra; People ex rel. Hoeges* v. *Guilfoyle,* 61 App. Div. 187, 188, *supra.*) Moreover, in *Matter of Maynard* v. *Monaghan* (284 App. Div. 280, 283, *supra*) this court said " that the commissioner is not confined merely to rating the probationary work of the appointee, but may investigate his past record to

determine his character, capability and fitness ''. In the instant case the appointing officer did not question any determination certified to him by the commission. He acted upon new facts. This distinguishes the present case from the authorities relied upon by petitioner, which fall into entirely different factual patterns. (Cf. *Matter of Wolff* v. *Hodson*, 285 N. Y. 197; *Matter of Lazenby* v. *Municipal Civil Service Comm.*, 116 App. Div. 135; *People ex rel. Mullen* v. *Sheffield*, 24 App. Div. 214.) In these decisions upon varying factual situations it was held that a civil service commission has no inherent authority to correct an error in determining eligibility to take an examination or in rating those who passed the examination after an appointment has been made and the appointee has acquired permanent tenure.

In our opinion the Medical Standards and Regulations for Patrolmen promulgated by the City Civil Service Commission are here inapplicable. They relate solely to pre-appointment standards and procedures. Thus, paragraph 1 requires the candidate to pass two medical boards, one described as the '' Qualifying Medical '' conducted by the department of personnel and the second known as the '' Pre-appointment Medical '' conducted by the police department. The standards are set forth in paragraphs 2 to 72, inclusive. Paragraphs 73 to 80, inclusive, contain procedures for the co-ordination of these two pre-appointment physical examinations. The petitioner attaches significance to the last sentence of paragraph 78 which states that '' If the Medical Examiner of the Department of Personnel finds the candidate qualified, the Police Department must so regard him and is powerless to medically reject him again.'' This statement when read in context plainly relates to procedures relating to medical examinations by the two departments prior to appointment. Here, the petitioner was found to be an unsatisfactory employee upon the basis of recommendations contained in medical reports made some five months after his appointment. His employment, however, did not terminate because of a medical rejection but upon the decision that he was not a satisfactory employee because of hypertension. Prior to appointment petitioner passed both of these physical examinations so the particular regulations have no relevancy. In this connection, however, it is interesting to note that the record discloses that it is not the practice for the medical examiner of the personnel department to take blood pressures of candidates and none appears on the physical examination of petitioner. The pre-appointment physical examination of the police department made in

January, 1955 showed a blood pressure of 140/80. This was just within the permissible standard of 140/90. Thus, prior to appointment there could have been no conflict between the two groups of medical examiners as to petitioner's blood pressure because the personnel department made no finding thereon and the applicant met the required standard.

We conclude that the finding that petitioner was an unsatisfactory employee was made in good faith for reasons that appear adequate and based upon credible proof. In our opinion the rules of the commission in no respect impinge upon the right of the police commissioner to consider the present physical condition of a probationer at the end of the probationary period in determining whether the appointee should become a permanent employee with all the benefits that ensue therefrom including the right to retirement for physical disability. It is unnecessary to consider whether the grant of powers to the personnel director by section 813 of the city charter is sufficiently broad to enable him to make rules circumscribing the commissioner in his evaluation of a probationer for permanent appointment. (Cf. *People ex rel. Kastor* v. *Kearny,* 164 N. Y. 64, 66, *supra*; *People ex rel. Walter* v. *Woods,* 168 App. Div. 3, 5; *People ex rel. Holsten* v. *Woods,* 167 App. Div. 899.) We find no such attempt to invade the province of the commissioner but to the contrary the commission by rule V has vested in the appointing officer the broad power to terminate at the end of the probationary period the employment of any unsatisfactory employee. In the absence of statute or rule to the contrary we should not narrowly construe the area of discretion of the commissioner. It must be obvious that physical condition is an important factor in reaching a determination as to whether or not a patrolman will be a satisfactory employee. In this case the Civil Service Commission made no blood pressure examination in its pre-appointment physical but deferred to the examination of the police department which disclosed that petitioner's blood pressure was barely within permissible limits. After five months' probationary duty two separate examinations showed the pressure to be well above permissible limits. We find nothing in statute, rule or conduct of the officials concerned that deprives the commissioner of the right to evaluate physical condition in making his decision to grant permanent tenure or terminate the services of a probationer.

A contrary holding, it seems to us, would weaken the foundations upon which the civil service system has been built. In many departments of the city service other than the police

department the physical ability of a probationer to perform the duties of the office must and should be evaluated by the appointing officer in making the final decision as to whether or not the services are satisfactory. Thus, in *Matter of Simineri* v. *Screvane* (decided concurrently herewith, 5 A D 2d 810), it appeared that petitioner's services had been terminated at the end of the probationary period by the commissioner of the department of sanitation. During a period of four months of the probationary period petitioner, among other reasons assigned for the termination of his services, had suffered from three disabling illnesses causing him to be absent 19 days. There was testimony from the chief medical officer of the department that the work performed by members of the department involved heavy physical labor in extremes of temperature and a policy had been adopted of accepting for permanent appointment only those probationers who were physically able to perform the duties of the position. The grant of this power to the appointing officer to be exercised in good faith gives full meaning to the recognized purposes to be served by a proper use of the probationary period. Conversely, to hold that the appointing officer in passing upon the question of permanent tenure may not consider the reports of his medical advisers and the actual physical condition of the employee during the probationary period is contrary to the established legal principles in this area of the law. As was said in *People ex rel. Sweet* v. *Lyman* (157 N. Y. 368, 380): "Obviously there are many positions in the civil service where the merit and fitness of an applicant cannot be ascertained with any certainty by a mere examination under the rules of the civil service. It seems apparent that what was intended by this provision of the Constitution was that merit and fitness should be the basis of appointments of public officers and employees, and that those qualities should be ascertained and determined, so far as they could be practicably, by such an examination, but that other and further methods should be employed when necessary to secure efficiency of service. It is manifest that actual trial of an appointee in the place which he seeks would furnish better means to accurately determine his fitness and merit than would any mere examination that could be had." We conclude that the construction of the applicable statutes and rules implicit in the determination of the commissioner has warrant in the record and a reasonable basis in law.

There remains for consideration the question of the timeliness of the service of the notice upon petitioner of the termination of his employment. Upon the trial, as has been

stated, there was testimony of an attempt to serve petitioner with the notice on July 31, 1955, the date that his employment ended pursuant to the decision of the commissioner. Special Term found that service was effected upon August 1, 1955 and the appellants upon this appeal accept that determination but contend that it was an effective and complete compliance with the requirement of paragraph 3(a) of section VIII of rule V. The lower court held to the contrary.

The rule of law is well established, as heretofore discussed, that a probationer is entitled to the whole of the probationary period and his services may not be terminated by the appointing officer prior to the end thereof. (*People ex rel. Kastor* v. *Kearny,* 164 N. Y. 64, *supra*; *Matter of Wolf* v. *Conway,* 276 App. Div. 798, *supra*; *People ex rel. Hoeges* v. *Guilfoyle,* 61 App. Div. 187, *supra*.) Thus, in the *Hoeges* decision a dismissal 15 days before the end of the probationary period was held to be illegal. By contrast, in the present case it has been determined that the service of a notice within 24 hours after the midnight hour when the period ended was illegal. A combination of these rules would in substance enunciate a principle that every appointing officer must during the 24-hour period constituting the last day of the probationary period effect service of the notice of termination upon a probationer.

It appears that the written notice dated July 30 informed petitioner that his services would be terminated at midnight July 31. Petitioner testified that he was on duty until 4 o'clock in the afternoon of July 29. His next tour of duty commenced at midnight of August 1. He was away from the city a portion of July 31 and returned in the afternoon of August 1. The notice of termination was served at 11:30 P.M. of that day. In this area of the law it has been held that service of the notice as soon as practicable complies with the requirement of the statute or rule. It is recognized that the police department is a quasi-military organization and, as petitioner contends, he could have been given special orders to report for duty on July 31 for the sole purpose of having the notice served upon him. Similar action was taken in *Matter of Dalton* v. *Darlington* (123 App. Div. 855) and the officer did not appear. The reasoning of the court is here applicable even in the absence of special orders to report. It was said (p. 857): " The purpose of the probationary period is to enable the appointing officer to determine whether a permanent appointment is desirable. That question is left solely to his judgment, and he has the whole probationary period in which to decide it. The appointing officer determined, on the last day of the pro-

bationary term, not to make the appointment permanent. We are not at all concerned with the circumlocution in the department by which that result was reached. It may be that the commissioner could have determined the question at an earlier date, but it is sufficient for our purpose that on the fifteenth he determined not to make the appointment permanent. Now, on that date the relator was not at the office, as the orders of his chief required, for which reason it was impossible to give him personal notice. As soon thereafter as practicable the required notice was given him, and it seems to me that this was a reasonable compliance with the rule. No one was harmed by the delay, and it was caused by the relator's disobedience of the orders of his chief. To hold now that a permanent appointment resulted from such delay would be to defeat the obvious purpose of the rule. The rule was designed simply to provide a method of indicating the determination reached by the appointing officer.''

A somewhat similar result was reached in *Matter of Marasco* v. *Morse* (9 Misc 2d 296, affd. 263 App. Div. 1063, affd. 289 N. Y. 768). Therein it appeared that the probationary period expired May 15, 1940. On that day the employee was given written notice that his services would be terminated at noon upon the following day. In writing at Special Term then Justice VAN VOORHIS said (p. 301): '' The question remains whether the fact that the petitioner was retained until noon on May 16, 1940, is sufficient to stamp him as a permanent appointee. His probationary term expired on May 15. It appears from the answer, and is not controverted by the reply, that the pay period expired on May 16, and that he was continued the extra half day for convenience in keeping the accounts. Does the fact that he was continued for these few hours constitute, in the language of Civil Service Rule XII, his retention in the service after the end of the probationary term? It is reasonable to conclude that it does not. No evasion of the rule appears to have been attempted. If the notice served on May 15 had specified that he was to continue until the following Christmas, or for some other extended period, a court might properly hold that the appointment became permanent.''

Upon the facts here presented we conclude that the notice was timely served. We recognize that civil servants employed on a temporary basis are entitled to prompt notice that their services are to be terminated. It seems unrealistic, however, in view of the rule that such a probationer is entitled to serve the full period, to hold that the appointing officer with mathe-

matical exactitude must so time the service of the notice that he will give the employee advantage of the entire period to demonstate his fitness and at the same time make certain that service is made before the midnight hour of the final day of employment. The facts in this record disclose that the failure to serve the notice on July 31 was excusable. On July 28 petitioner was subjected to a final physical examination. On July 30 the commissioner made his decision in writing terminating Going's employment as of midnight July 31. On the same day the termination notices of petitioner and three other probationers were sent to the precinct station. The commanding officer examined the roll calls and found that Going would be in the station house before midnight on July 31 because he was scheduled to go on duty at that hour. It is conceded that petitioner did not work on July 30. It was not discovered, however, through administrative error or confusion, that petitioner had applied and been granted relief from duty on the 31st under a special order because he was a veteran and had worked on the previous Memorial Day. On the following day — August 1 — the same officer discovered that the notice had not been served. He immediately notified the precinct in which Going resided to go to his home and instruct him to call the lieutenant so that the latter could order him to report to the station house. This was not accomplished because, as heretofore stated, Going was away from the city on July 31 and August 1. When he reported for duty late on the latter day the notice was served. It is difficult to see how the delay of 24 hours in serving the notice in the light of these facts can be said to have caused petitioner's temporary appointment to ripen into permanent tenure. In a department that is passing upon thousands of probationers annually it would seem that there was a substantial compliance with the rule. As was said in *Matter of Dalton* v. *Darlington* (123 App. Div. 855, *supra*) " the primary purpose of civil service laws and rules is to promote the good of the public service, and that purpose is not to be frustrated by technical or narrow constructions."

The order appealed from should be reversed and the petition dismissed.

BREITEL, J. P., RABIN and BERGAN, JJ., concur.

Order unanimously reversed on the law, with $20 costs and disbursements to the appellants and the petition dismissed.