Fuchsberg, J.
These cross appeals involve a probationary period imposed by section 210 (subd 2, par [f]) of the Civil Service Law (commonly known as the Taylor Law) upon public school teachers because they had participated in an illegal strike.
The petitioners, two tenured teachers, participated in the strike against the respondent school district in October of 1972. As a result, by operation of law, they were placed on probation for a period of one year, the penalty specified in section 210 (subd 2, par [Q) of the Civil Service Law, in their case to run from October 6, 1972 to October 6, 1973. In March of 1973, however, while the petitioners were still serving their imposed probations, the district discharged them without a hearing. To challenge that discharge, the two teachers then brought an article 78 proceeding which resulted in the Supreme Court reinstating them to their positions with full salary and back pay, although, because of the approach of the Regents’ examinations, the court did not require their actual assignment to classrooms for the balance of the then current academic year. (73 Misc 2d 1028.) Neither party appealed from that order.
The district duly returned petitioners to the payroll and issued the back pay for the period between the March discharge and the date of the court’s order of reinstatement, May 10, 1973. But on May 24, 1973, the respondent district’s *490 superintendent of schools wrote to petitioners to inform them that, because their services during probation had been unsatisfactory, he would not recommend that they be appointed to tenure at the close of their probationary year. Upon receipt of the superintendent’s recommendations, the board of education met with the petitioners’ supervisors and, after a meeting which the two teachers attended, and presumably after due deliberation, voted not to grant tenure. Neither party claims the meeting constituted a hearing.
The petitioners then brought the present article 78 proceeding to challenge the district’s decision not to grant them tenure. They contend, first of all, that they had a statutory right to serve the full year of probation in the classroom before any decision to deny tenure could be made. Secondly, they assert that statutorily required evaluation procedures were not properly followed before the decision was made. Finally, they take the position that, if the May 24 notice was not effective to terminate their services, then they have reacquired permanent tenure by estoppel, no other notice of intent to deny tenure having been given to them within the probationary year expiring on October 6, 1973. On these bases, they seek reinstatement as tenured teachers and back pay from October 6, 1973 to the present.
The district, on the other hand, insists it not only complied with the order issued in the prior proceeding, but that, in terminating the services of petitioners as of October 6, 1973, it acted strictly in accord with the applicable statutes.
The Supreme Court did not fully agree with either party. It did not find that the petitioners had obtained tenure by estoppel, but it did hold that the notice of intent to terminate given on May 24 was ineffective for failure of the respondents to have first afforded the petitioners the opportunity to be screened in accordance with statutorily required evaluation procedures. Its order reinstated the teachers for a further probationary period of four months, during which time they were not only to be permitted to teach actively but required to be further evaluated preliminary to the district’s ultimate decision on tenure. The Appellate Division affirmed that disposition. Both parties have appealed. For the reasons which follow, we conclude that the petition should have been dismissed.
At the outset, it should be made clear that there is no evidence that the failure to grant tenure here was a reprisal *491 for petitioners’ strike activity. This case would have stood on a different footing had the termination been a device by which to enlarge the punishment mandated, but also limited, by section 210 (subd 2, par [f]). There is neither support in the record for such a claim nor have the petitioners made it on this appeal, expressly abjuring it at oral argument. Further, the response to the petition sets out in detail the alleged specific shortcomings in petitioners’ teaching which respondents assert motivated the district in denying tenure; these were independent of the parties’ earlier difficulties.
Instead the issues raised by this appeal revolve around the peculiar status accorded to striking teachers under section 210 (subd 2, par [f]) of the Taylor Law. That section reads: "Probation. Notwithstanding any inconsistent provision of law, any public employee who has been determined to have violated this subdivision shall be on probation for a term of one year following such determination during which period he shall serve without tenure; provided, however, that the effect of probation hereunder with regard to teachers and others subject to the education law shall not exceed or differ from the effect of probation hereunder with regard to other public employees. ” (Emphasis added.)
We have not previously had occasion to comment on the precise reaches of the protections provided for those "subject to the education law” by the emphasized language in section 210. At least one Federal court has done so, however, indicating that the policy behind the inclusion of special reference to teachers placed on penalty probation was clearly a recognition that the ordinary procedures applicable to teachers under the Education Law were inadequate to protect their rights in this special situation: "[W]e are persuaded that the failure of the New York legislators to repeat the language of the prior Condon-Wadlin Act (C. 790, §108 (5) (c) (1958) McKinney’s N.Y. Sess. Laws 1008 (repealed 1967)) which provided that the probationer had to serve without tenure 'and at the pleasure of the appointing officer or body’ was significant. Without clear and unmistakable language to the contrary we would hesitate to construe the statute to permit the obliteration of benefits accrued during service by administrative whim.” (Kiernan v Lindsay, 334 F Supp 588, 593, affd 405 US 1000, rehearing den 405 US 1076.)
Under the provisions of the Education Law, which ordinarily governs the probationary terms of teachers, a probationary *492 teacher may be discharged without a hearing at any time (Education Law, § 3012; Matter of Pinto v Wynstra, 22 AD2d 914). That same law also governs the procedures and timing for the giving of notice that tenure will not be granted.
We agree with the court in Kiernan, however, that section 210 of the Taylor Law requires us to substitute for the minimal protections of the Education Law the more elaborate rights during a penalty probation which other nonteaching civil service employees receive. That substitution accords with section 210’s specific requirement that its punitive effect on teachers "shall not exceed” what other civil service employees suffer. The applicable protections are set forth in 4 NYCRR 4.5, enacted pursuant to the enabling legislation found in section 63 of the Civil Service Law. For example, 4 NYCRR 4.5 (1) provides that an employee may not be discharged during probation except for misconduct or incompetence and then only after a hearing (People ex rel. Kastor v Kearny, 164 NY 64; Matter of Going v Kennedy, 5 AD2d 173, affd 5 NY2d 900). It was on that basis that the Supreme Court, in the prior proceeding between the parties here, ordered the petitioners reinstated after the district tried to discharge them outright and without a hearing in midprobation (73 Misc 2d 1028).
In contrast, the question now is whether the district’s May 24 notice of termination, as distinguished from the earlier discharge, violated either or both of two other provisions of 4 NYCRR 4.5.
Section 4.5 (a) specifies that: "An appointment shall become permanent [tenured] upon the completion of the minimum period of probation unless the probationer, prior to the completion of such service, is given written notice that the probationary term will be continued * * * If the conduct or performance of the probationer is not satisfactory, his employment may be terminated at any time after the completion of the minimum period of service and on or before the completion of the maximum period of service.” {Emphasis added.)
Section 4.5 (i) specifies that: "The probationer’s supervisor shall carefully observe his conduct and performance and, at least two weeks prior to the end of the probationary term, shall report thereon in writing to the proper appointing authority. The supervisor shall also, from time to time during the probationary term, advise the probationer of his status and progress. A probationer whose services are to be terminated for unsatisfactory service shall receive written notice at *493 least one week prior to such termination and, upon request, shall be granted an interview with the appointing authority or his representative.” (Emphasis added.)
The petitioners contend that the one-year probationary period meted out under section 210 of the Taylor Law should be construed as a "minimum period” of probation under 4 NYCRR 4.5 (a) (3) so that notice by the district that the teachers would not be rehired with tenure was premature because given before the probationary period was over. We cannot agree with that interpretation of section 4.5 (a) (3) as it is incorporated into the Taylor Law.
It must be remembered that the provisions of section 4.5 were intended to apply to the jobs of civil service employees other than teachers; as we have already noted, the latter’s rights are governed, in general, by the Education Law. Moreover, section 4.5 was not specifically designed to apply to the one-year strike penalty probation. The fact that that section has been imported into the teaching milieu for a limited purpose therefore requires that its language be read with the overall legislative purpose in mind, rather than so technically that effects alien to the limited Taylor Law purpose result.
Strictly speaking, Taylor Law probation has no maximum or minimum terms of length; it lasts for precisely one year. It is not fashioned, as was section 4.5, to enable the employer to arrange for flexible periods of probation such as are suitable for the proper evaluation of new employees.* As one court noted, in dealing with these statutes in a different context, an overliteral application, on the one hand, of the rule that a probationer is entitled to complete his probation before being terminated, and, on the other hand, of the rule that tenure is acquired by estoppel if notice is not timely given, would result in the absurd "principle that every appointing officer must during the 24-hour period constituting the last day of the probationary period effect service of the notice of termination upon a probationer” (Matter of Going v Kennedy, 5 AD2d 173, 182, affd 5 NY2d 900, supra).
Therefore, it accords more with the legislative intent to treat the one-year Taylor Law probation as the provisions of section 4.5 (a) (3) treat a maximum term of probation. Pro *494 vided that the procedures specified by section 4.5 (i) are complied with, notice of an intent not to grant tenure at the end of the probationary year may thus be given before the year ends, whenever in good faith the district has reached the conclusion that the probationer’s services are unsatisfactory (see Matter of Going v Kennedy, supra; Matter of Gordon v State Univ. of N. Y. at Buffalo, 35 AD2d 868; Matter of Dalton v Darlington, 123 App Div 855). Indeed, it is interesting in this context that the right to receive such notice earlier, rather than later, has long been fought for by teachers and other civil service employees, so that a fuller opportunity to seek other employment may be afforded (see Matter of Going v Kennedy, supra; Nash v Board of Educ., 39 NY2d 943). In the present case, notice given before school recessed for the summer enabled the petitioners to seek new positions for the fall; notice after the new school year had already started, of course, would not have served that purpose nearly so well.
The petitioners also assert that the requisite information on their "status and progress” called for by section 4.5 (i) was not given to them, that their supervisors did not "carefully observe [their] conduct and performance” and that no written report was ever made to the board of education as a result of their evaluations. They do not dispute that there was such activity; rather their position is that it was insufficient in quality to meet the statutory requisites.
The district contends that the oral reports on .the teachers’ performance levels given to the board at its méeting, in the presence of teachers themselves, constituted substantial compliance with the reporting requirement of section 4.5 (i). Further, affidavits and some actual evaluation reports submitted by the supervisors, forming part of the record in this case, indicate that the mandated observations and feedback to teachers were in fact provided during the months while they were teaching as probationers.
The Supreme Court did not make a finding of fact as to whether the provisions of section 4.5 (i) had been complied with. Instead, it held that, as a matter of law, the foreshortening of the teachers’ probationary periods by some four months of enforced idleness, albeit with pay, deprived them of their right to be evaluated and assisted in improving their performances. It was on this basis that it ordered the four-month extension of the probationary period.
We cannot agree with that disposition. The district’s deci *495 sion not to return the teachers to the classroom because of their potentially disruptive effect on students studying for Regents’ examinations was fully authorized by the order in the prior proceeding, and that order was not appealed. It made no provision for a "make-up” period during the next academic year. And even if the prior proceeding had not determined the issue of whether the two teachers were entitled to more teaching time before being terminated, the district was within its rights to make that decision in May of 1973.
The purpose of the evaluation requirements in section 4.5 (i) is to ensure that, before a probationer is told that his or her performance is not up to the standards of an employer, he or she has the opportunity to make improvements (Matter of Going v Kennedy, 5 AD2d 173, affd 5 NY2d 900, supra; People ex rel. Kastor v Kearny, 164 NY 64, supra). Were this a case involving a newly appointed probationer, in view of the teachers’ allegations that the quality of their supervision was less than exemplary, it might be appropriate to remit for a finding of fact on that issue. Here, however, we see no need to do so. It is clear that some evaluation did take place and that the teachers were informed of its results. Moreover, the preprobationary performance levels of the experienced teachers here indicate that they knew and understood what was required to meet the district’s standards. The evaluations of their supervisors simply show that, for whatever reasons, their performance levels during the probationary year had become unacceptable to the district.
We understand the position of the experienced teacher who is suddenly a probationer again and thus subject to constraints of supervision and criticism from which he had long been free. But a school district is entitled to weigh the teacher’s performance itself, not merely the reasons for it, and its decision, if not wholly arbitrary, must be respected by the courts (see Matter of Dalton v Darlington, 123 App Div 855, supra; Matter of Gordon v State Univ. of N. Y. at Buffalo, 35 AD2d 868, supra).
Finally, the petitioners were not entitled to a hearing before the district arrived at the decision to deny tenure. Section 4.5 of title 4 of the NYCRR does not require a hearing when the termination comes at the end of probation, as distinguished from a discharge in midprobation, when a district acts on the basis of unsatisfactory service (see Matter of Rosenberg v *496 Wickham, 36 AD2d 881; Matter of Safran v Wallace, 41 AD2d 793). Nor, since petitioners were probationers at the time of termination, was there any due process right to a hearing here (Board of Regents v Roth, 408 US 564; Huntley v Community School Bd. of Brooklyn, 543 F2d 979). And, in view of our disposition, the teachers’ claim for back pay from October 6, 1973 to the present is academic.
Accordingly, the order of the Appellate Division should be reversed and the petition should be dismissed, without costs.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones and Wachtler concur with Judge Fuchsberg; Judge Cooke dissents and votes to affirm on the opinion by Mr. Justice Paul J. Yesawich at Special Term.
Order reversed, etc.

 (See Matter of Going v Kennedy, supra; People ex rel. Kastor v Kearny, 164 NY 64, supra; see, also, section 63 of the Civil Service Law, and regulations enacted pursuant thereto, for the specific minimum and maximum periods of probation which are established by the Civil Service Commission for each category of civil service job).